United States Court of Appeals,

Fifth Circuit.

No. 92-7531.

William A. RAMSEY, Jr., et al., Plaintiffs,

William A. Ramsey, Jr., Plaintiff-Appellant Cross-Appellee,

v.

The COLONIAL LIFE INSURANCE COMPANY OF AMERICA, d/b/a Chubb Life America, Defendant-Appellee Cross-Appellant.

Jan. 27, 1994.

Appeal from the United States District Court for the Southern District of Mississippi.

Before GOLDBERG, HIGGINBOTHAM and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

This case comes to us as a claim for benefits by William Ramsey Jr. ("Ramsey"), under a medical insurance policy terminated by The Colonial Life Insurance Company of America ("Colonial Life"). When Ramsey became paralyzed from the neck down, he was covered as a dependent on a policy issued to his wife's employer, the Moulden Supply Company ("Moulden"). After two and one half years of paying Ramsey's medical bills, Colonial Life refused to continue covering Ramsey under the policy.

Ramsey filed suit and the court below took jurisdiction under the pre-emptive sweep of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.; see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 57, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987) (claims for employee benefits predicated on state law are pre-empted by ERISA). The district court granted summary judgment in favor of Ramsey and ordered Colonial Life to continue covering Ramsey's medical expenses. The court also determined that Ramsey was not entitled to attorney's fees as provided in ERISA under 11 U.S.C. § 1132(g)(1) and entered judgment accordingly.

Ramsey moved for reconsideration of the judgment to the extent that it denied attorney's fees. After his motion to reconsider was denied by the district court, Ramsey noticed an appeal to this court. Colonial Life subsequently cross-appealed the lower court's judgment as to Colonial Life's

continued liability under the policy.

Addressing first the issue of Colonial Life's liability, Colonial Life asserts that Ramsey was covered under an expense policy which pays benefits only while premiums are being paid by the policyholder. According to Colonial Life, once the premiums stop, the coverage terminates. The company distinguishes Ramsey's expense policy from an accident policy, in which a beneficiary is insured for the duration of any injury suffered while the policy is in force. This form of insurance covers medical expenses incurred after the policy is canceled as long as the injury was suffered while the policyholder was paying the premiums.

Colonial Life contends that the unfortunate but indisputable result of Ramsey's limited form of coverage was that when his wife's employer canceled the policy, Ramsey's benefits were terminated. According to Colonial Life, these shortcomings were intrinsic to Moulden's policy. Colonial Life thus argues that, although seemingly inappropriate, the termination of benefits was in compliance with the substance of Ramsey's insurance coverage.

We decline to follow the interpretation of the insurance contract urged by Colonial Life, however, for the simple reason that a facial reading of the contract reveals that Ramsey's benefits extend beyond termination of the policy. The unfortunate result of the plain meaning of the contract is that the insurance company will bear the continuing burden of compensating Ramsey for medical expenses without the benefit of continued premium payments. However, the insurance policy was formulated by Colonial Life itself and therefore Colonial Life cannot contest being bound to its own contract. We find the district court's result is correct and we affirm.

## I. Facts

The relevant facts in this case are not in dispute. The insurance policy in question was acquired by Moulden Supply Company, Inc. in August of 1986 from defendant Colonial Life. Dianne Ramsey, an employee of Moulden, chose to cover herself and all her dependents, including her husband, Ramsey, under Moulden's group policy.

On January 31st, 1987, Ramsey fell off a ladder and fractured his spine while working in his yard. The resulting quadriplegia permanently and totally disabled him to the point where he will

require medical treatment and care for the remainder of his life.

After incurring the additional expenses which resulted from covering Ramsey's condition, Colonial Life dramatically escalated Moulden's premiums.[1] On August 1, 1989, as a consequence of the severity of the premium increase, Moulden Supply canceled the policy.

The insurance policy was an expense policy, as described above, which discontinued the insured's rights to receive reimbursement for medical expenses at the time the policyholders terminated the policy.[2] Due to the immanent loss of coverage, Ramsey and his wife sought to secure a conversion policy from Colonial Life that would afford the same benefit level as had been provided under the Moulden gro up policy. Colonial Life issued a conversion policy to the Ramseys with a strict $20,000 maximum lifetime limit on benefits, significantly lower than the $2,000,000 limit that the old Moulden group policy provided. Ramsey, despite the reduction in coverage, paid the required premiums on the conversion policy.

At the end of July, 1990, Colonial Life began refusing to pay any further medical expenses incurred by Ramsey. On August 9, 1990, Ramsey and his wife filed a lawsuit against Colonial Life in the state Circuit Court of Hinds County, Mississippi, alleging state law claims of bad faith refusal to pay benefits and gross negligence with intent to deceive in inducing plaintiffs to convert to a policy with substantially lower limits.

Colonial Life subsequently removed the action to the United States District Court for the Southern District of Mississippi. Judge William H. Barbour Jr. recharacterized the pleadings as a claim for benefits under the provisions of ERISA, 29 U.S.C. § 1132(a)(1)(B) provi ding a federal cause of action to obtain entitlements due under employee benefits plans. *See Degan v. Ford Motor Co.,* 869 F.2d 889 (5th Cir.1989).

Under the reconstituted pleadings, Judge Barbour dismissed Ramsey's wife and various state

---

[1]There are allegations in the record that an additional factor in the premium increase was a heart condition of another Moulden group policy participant.

[2]The problems presented in this case are only a microcosm of the global failures of our present day health care system. While the daunting task of overhauling the administration of health care falls to the President and Congress, in this case our role is more manageable: deciding the extent of coverage maintained for the benefit of a single individual.

law causes of action. The district court framed the remaining issues as follows: (1) whether Ramsey was entitled to benefits under the original Moulden group policy, (2) whether he had any rights under the conversion policy, and (3) whether he could recover attorney's fees. During the pendency of the federal litigation, Colonial Life tendered payment for medical expenses incurred by Ramsey during the first twelve months following the group policy cancellation.

As to the first issue, the district court ruled that under ERISA, the issues presented should be answered by referencing the body of federal common law. *See In re Heci Exploration Co., Inc.,* 862 F.2d 513, 521 (5th Cir.1988). Under federal common law, the court ruled that Ramsey was entitled to continuing coverage based upon the court's interpretation of the Extension of Medical Benefits section of the policy. The court began its analysis by noting that the Termination of Insurance section of the policy states that "some medical benefits may be continued" after termination of the policy. The opinion then refers to the section of the policy entitled "Extension of Medical Benefits" which reads:

> If you or a dependent are totally disabled when premium payments stop, medical benefits will be continued, until the earlier of:
>
> a. 12 months from the day you become disabled;
>
> b. the date total and continuous disability ends;
>
> c. you or the dependent are insured for similar medical benefits under another group plan. The plan must pay benefits for the injury or sickness that caused the total disability.

Judge Barbour reasoned that this section is internally inconsistent because on the one hand it mandates extension of coverage, "medical benefits will be continued," but, on the other hand, subsection a. denies Ramsey the extension of benefits because he was disabled more than twelve months prior to termination of the policy. The court determined that the clause mandating extension expressed the authentic intent of the policy and Judge Barbour thus nullified subsection a. as it applied to Ramsey. The court held that Ramsey was entitled to an extension of benefits until his disability came to an end, or until he obtained other insurance.

The judge also ruled that any premiums paid under the conversion policy were unnecessary and should be refunded. As to attorney's fees, Judge Barbour held that because there was no showing

of a bad faith denial of benefits by Colonial Life, there should be no award of attorney's fees.[3]  *See*

*Pitts v. American Security Life Insurance Co.,* 931 F.2d 351, 358 (5th Cir.1991) (setting out the five

factor test for awarding attorney's fees).  Judge Barbour also referenced various other considerations

which militated for the denial of attorney's fees.

The district court entered its final judgment on June 9, 1992 including a denial of attorney's

fees.  Ramsey moved for reconsideration of the attorney's fee ruling on June 23.  The district court

denied this motion on July 17, and Ramsey proceeded to file his notice of appeal on August 11.

Colonial Life then cross-appealed on the issue of the district court's extension of Ramsey's insurance

coverage.

Before advancing to our discussion of the merits of this appeal, we must first address the

question of whether the notice of appeal was timely filed.

## II. Analysis

A. Timeliness of Appeal

We must determine whether Ramsey's appeal was properly filed within the thirty day limit

as required by Federal Rule of Appellate Procedure (FRAP) 4(a)(1).[4]  We address the issue of

timeliness as an initial matter because the "time limits for filing a notice of appeal are "mandatory and

jurisdictional' " *First Nationwide Bank v. Summer House Joint Venture,* 902 F.2d 1197, 1199 (5th

Cir.1990) (quoting *Budinich v. Becton Dickinson and Co.,* 486 U.S. 196, 203, 108 S.Ct. 1717, 1722,

100 L.Ed.2d 178 (1988)).

In this case, a final judgment including a denial of attorney's fees, was entered on June 9,

1992.  The notice of appeal was filed on August 11, two months later, well beyond the thirty day limit

of Rule 4(a)(1).  Nevertheless, both parties agree that the appeal should be considered timely because

---

[3]The request for attorney's fees was made under the appropriate provision in ERISA.  29
U.S.C. 1132(g)(1).

[4]FRAP 4(a)(1) provides:

> In a civil case in which an appeal is permitted by law as of right from a
> district court to a court of appeals the notice of appeal required by Rule 3 shall be
> filed with the clerk of the district court within 30 days after the date of entry of the
> judgment or order appealed from.

Ramsey moved for reconsideration of the attorney's fee ruling on June 23; an action which they argue should have tolled the thirty day limit. They claim that Ramsey's motion was a Federal Rule of Civil Procedure 59(e) motion which, under FRAP 4(a)(4)[5], alters the timeliness requirements for filing appeals. The parties contend that since the appeal was filed within thirty days of the decision to deny Ramsey's motion to reconsider was timely filed. On review, we agree with their contentions.

The difficulty with the parties' position arises out of the Supreme Court's decision in *Budinich,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178. In that case, the Court announced that a request for attorney's fees will not prevent an otherwise final decision on the merits from becoming final for purposes of timely appeal. 486 U.S. at 202, 108 S.Ct. at 1722.

The *Budinich* opinion relies heavily on *White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), which set out the principle that a request for attorney's fees was not a Rule 59(e) motion. *See also Knighton v. Watkins,* 616 F.2d 795, 797 (5th Cir.1980) ("a motion for attorney's fees is unlike a motion to alter or amend a judgment ... [and so] is, therefore, not governed by the provisions of 59(e)"). The Court in *White* reasoned that a request for attorney's fees is a collateral issue akin to a motion for costs that does not amend or alter a judgment on the merits. In addition, the Court sought to avoid the "harsh and unintended consequences" of applying the narrow ten day time constraints of Rule 59(e) to the ameliorative intent of the attorney's fee shifting provision of 42 U.S.C. § 1988. *White,* 455 U.S. at 452, 102 S.Ct. at 1167.

We believe that the motion to reconsider attorney's fees under consideration here is distinguishable from both *White* and *Budinich* because the motion, unlike the cases presented to the Supreme Court, is not an original request for attorney's fees. Instead we have a case in which the district court, as part of its final judgment on the merits, has already passed on and denied the

[5]FRAP 4(a)(4) provides:

> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 to alter or amend the judgment ... the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

plaintiff's motion for attorney's fees.  Thus, plaintiff's motion was not an original request for fees but instead was a motion for reconsideration of a final judgment where the subject matter of that motion happened to focus on the question of attorney's fees.[6]

In *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986) the Seventh Circuit, in an analogous situation, ruled that a request to clarify the court's order with regard to attorney's fees and to alter the parties responsible for those fees was considered a Rule 59(e) motion which effectively tolled the thirty day time limitation for filing appeals.  The *Charles* court cited with approval our decision in *Harcon Barge Co. v. D & G Boat Rentals, Inc.,* 784 F.2d 665 (5th Cir.1986) (en banc), *cert. denied,* 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351, in which we held that a "motion that "calls into question the correctness of a judgment should be treated as a motion under Rule 59(e), however it is styled.' "  784 F.2d at 670 (quoting *Dove v. Codesco,* 569 F.2d 807, 809 (4th Cir.1978)).

The motion in this case was filed within the ten day limit of Rule 59(e) and requested reconsideration of an issue determined in the final judgment.  In a case where attorney's fees are one part of an integrated judgment on the merits, this court has treated a motion to reconsider the judgment which includes reconsideration of the attorney's fees issues to be pursuant to Rule 59(e).  *See Treuter v. Kaufman County, Texas,* 864 F.2d 1139 (5th Cir.1989) (motion to reconsider order which included attorneys fees adjudication constituted Rule 59(e) motion).  In the instant case, we have a motion to reconsider which solely implicates the attorney's fees portion of the judgment.  We see no reason to distinguish this motion to reconsider merely because it exclusively addresses the attorney's fees portion of the judgment.  One notices appeals of judgments, not issues.  Thus, a Rule 59 motion to reconsider a judgment should stay appeals of all issues decided by that judgment.

Admittedly, a line of cases has arisen to complicate our analysis.  This court, in *Echols v. Parker,* 909 F.2d 795 (5th Cir.1990) ruled that a supplemental motion for attorney's fees filed after the court had already addressed the issue would, like original requests for fees, not be considered a

---

[6]This result comports with the basic remedial purpose behind attorney's fees statutes generally. *See White,* 455 U.S. at 452, 102 S.Ct. at 1167.  To penalize a litigant for seeking attorney's fees by refusing to toll the thirty day limitation would put them at a disadvantage as compared to those litigants who were moving to have a judgment reconsidered based on other grounds.

Rule 59(e) motion. The *Echols* court stated that "Rule 59(e) does not apply to a motion for attorney's fees under 42 U.S.C. § 1988, whether the motion is original or supplemental." 909 F.2d at 799 (quoting *Cruz v. Hauck,* 762 F.2d 1230, 1236 (5th Cir.1985)); *accord Campbell v. Bowlin* 724 F.2d 484 (5th Cir.1984) (motion to supplement attorney's fees not cognizable under Rule 59(e)); *Cobb v. Miller,* 818 F.2d 1227 (5th Cir.1987) (where judgment on merits includes disposition of attorney's fees, motion to request additional fees incurred on appeal remains a collateral issue not governed by Rule 59(e)).

The focus of our concern becomes how broad a definition should be given to the term "supplemental" motion. In all these decisions, similar to the situation before us in the instant case, the district court disposed of the issue of attorney's fees in its judgment on the merits. What distinguishes these other cases from the situation under consideration here is that the litigant's motion in these other cases was a request for additional fees. *See e.g. Echols,* 909 F.2d at 798. The term supplement itself implies that the movant is seeking merely to add to an original request.

By contrast, in the instant case Ramsey asked the lower court to amend the final judgment issued by the court. That is, he made a motion requesting that the judge reconsider his decision denying altogether any grant of attorney's fees. The relevant distinction is that the *Echols* line of cases presents requests for additional fees, a situation almost identical to *Budinich* which involved an original request for fees. In the instant case, Ramsey does not request additional fees, he requests only that the judge review his decision denying fees in the first place. *Echols* is therefore not relevant to our holding as it merely stands for the proposition that a request for fees, whenever it is made, is not considered a Rule 59(e) motion.

Today we rule that a motion to reconsider a judgment will be considered a Rule 59(e) motion even where the request for reconsideration encompasses only that part of the judgment regarding attorney's fees. Because Ramsey's request to reconsider the denial of attorney's fees was a Rule 59(e) motion, under Federal Rule of Appellate Procedure 4(a)(4), this motion tolled the thirty day time limit for appealing a district court judgment until the judge disposed of the motion. In sum, Ramsey's notice of appeal, filed within thirty days of the judge's denial of his Rule 59(e) motion, was timely and

we are now able to proceed to the merits of his appeal.

B. Extension of the Group Policy Benefits

Colonial Life, in its cross-appeal, disputes the interpretation of the insurance policy given by Judge Barbour requiring the extension of medical coverage for Ramsey. Our first task in evaluating this contention is to determine the appropriate level of review.

For this endeavor, we turn to *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) where the Supreme Court laid out a scheme for determining the standard of review in ERISA litigation. The reviewing court, in entertaining a claim which questions, "a denial of benefits ... under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956-7; *Schultz v. Metropolitan Life Ins. Co.,* 872 F.2d 676, 678 (5th Cir.1989) (where "[n]either party has pointed to any provision in the Plan which gives the administrator discretionary authority to determine benefit eligibility or to construe the plan terms ... the district court's review of the administrator's denial of the [plaintiff's] claim will be tested here based on a de novo review standard."); *Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 934 (5th Cir.1993) (same). There has been no allegation that Colonial Life exercised its discretionary authority in denying Ramsey's benefits. We are therefore required to invoke a de novo evaluation of Colonial Life's decision to terminate Ramsey's coverage.

The district court ordered Colonial Life to continue Ramsey's medical coverage under the provisions of the extension of benefits clause. We need not evaluate the analysis propounded by Judge Barbour ignoring the subsection a. time limit based on a contradiction within the policy which he understands to mandate an extension of benefits. Instead, we hold that the language of section a. is inapplicable to Ramsey by its very terms and therefore we require Colonial Life to offer Ramsey an extension of his insurance benefits under the old policy.

The insurance policy in question commences with the following introductory definition, " "You' or "yours' refers to the employee, not the policyholder." While the policy is not at this point clear whether "you" or "yours" includes dependents of the employee, a comprehensive look at the

policy reveals a consistent differentiation between "you" and "your dependents". For instance, the policy describes when "[y]our insurance will end" and when "[d]ependents insurance will end" as separate eventualities. The termination of the employee's insurance by definition terminates the dependent's insurance.

Recapitulating the text of the relevant Extension of Medical Benefits section, the opening sentence states that "[i]f you or a dependent are totally disabled ... medical benefits will be continued, until the earlier of," followed by three possible conditions. The distinction between the employee and his or her dependents is thus maintained in the initial clause of the relevant section.

The most pertinent condition to the extension of benefits is set out in the following subsection which plainly states that the benefits will continue until, "a. 12 months from the day *you* become disabled." (emphasis added). It is this section which Colonial claims precludes Ramsey from receiving continuing coverage as he was disabled more than twelve months prior to the termination. However, the clear language of this condition does not include dependents of the employee. The section is directed only at the employee him or herself. It therefore cannot be applied to Ramsey as a dependent.

By contrast, the third condition of the very same extension clause, subsection c., states just as plainly that benefits will continue until, "c. you *or the dependent* are insured for similar medical benefits under another group plan." (emphasis added). Had Colonial Life intended subsection a. to cover Ramsey, it should have written it to mirror subsection c. In that case subsection a. would read, "12 months from the day *you or your dependents* become disabled." Because it did not, the subsection is not relevant here and will not terminate Ramsey's extension of benefits.

While this reading seems to elevate the picayune to the preposterous, we note that the language of these sections is absolutely clear: the section in the policy as a whole, and this clause in particular, continuously refer to "you or the dependent" while the clause limiting the extension to twelve months names only "you". The intent of the drafters which arises from the plain wording of this sentence is pellucid in its simplicity: section a. does not apply to dependents, i.e. Ramsey.

Even if the policy was not entirely consistent in distinguishing between the employee and his

or her dependents, the precise reference in this particular section would be, at best, ambiguous. We cognize that this circuit follows the *contra proferentem* rule of contract interpretation in the ERISA context. *Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991); *cf. Wise,* 986 F.2d 929, 938 (rule of contract interpretation "mandate[s] that we adopt the most pro-beneficiary interpretation"). This rule has been adopted by various circuits. *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534 (9th Cir.1990) (*cert. denied* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587) (rule of *contra proferentem* applies); *McNeilly v. Bankers United Life Assurance Co.,* 999 F.2d 1199, 1201 (7th Cir.1993) ("when plan terms are ambiguous, we construe them strictly in favor of the insured."); *Delk v. Durham Life Ins. Co.,* 959 F.2d 104 (8th Cir.1992) (adopting the contra insurer rule when the language remains ambiguous even when accorded its ordinary meaning).

In *Hansen* we wrote that "[a]ny burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document." 940 F.2d at 982. In the instant case, we construe any confusion which may arise as to the ambiguous reference of "you" in subsection a. against the insurer and presume that it refers only to the employee and not his or her dependents.

Simple rules of contract interpretation demonstrate that the clause limiting the extension of benefits to "12 months from the day you became disabled" does not apply to Ramsey. The extension of benefits granted to Ramsey should continue until either of the other two conditions set out in subsections b. and c. of the extension of benefits clause come to pass or until he reaches the policy limits. Thus, we hold that the district judge reached the correct result when he determined that Ramsey was entitled to continued medical coverage under the policy until such time as he finds other insurance, he is no longer paralyzed, or until the policy limit of $2,000,000 has been reached.

## C. Conversion Policy

We also follow Judge Barbour's ruling on the conversion coverage. The conversion policy was written to cover Ramsey from the time his wife's group policy at Colonial Life terminated.

Because we agree that the original coverage continues to provide protection, there was no reason for Ramsey to have purchased a conversion policy and the district court properly entered judgment in favor of plaintiff in the amount Ramsey paid for that policy.

Where both parties to a contract are mistaken as to a material aspect of the contract, a court can reform or void the parties' obligations under that document. *See Audio Fidelity Corp. v. Pension Ben. Guaranty Corporation,* 624 F.2d 513, 518 (4th Cir.1980) (in interpreting an ERISA-governed pension, "a court of equity can reform a contract to correct a mistake.... But the mistake must be mutual."); *cf. Meza v. General Battery Corp.,* 908 F.2d 1262 (5th Cir.1990) (mutual mistake allows reformation of collective bargaining agreement). Because both parties would not have agreed to the contract had they known the proper construction of the group policy, a mutual mistake about the scope of coverage, the disadvantaged party is entitled to avoid the contract. *Audio Fidelity,* 624 F.2d at 518. We conclude that the district court properly ordered Colonial Life to refund all payments made by Ramsey in support of the conversion policy.

D. Attorney's Fees

Ramsey complains that the district court's erred in denying his request for attorney's fees. The denial was based on an evaluation of the five factor test set out in *Pitts,* 931 F.2d at 358 (*quoting Ironworkers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980)).[7]

Our review is limited to an abuse of discretion inquiry. 29 U.S.C. § 1132(g); *Pitts,* 931 F.2d at 358. In his decision, Judge Barbour reviewed the application of the *Pitts* test to the facts of this case and found that Ramsey was not entitled to attorneys fees for a variety of reasons. The district court established that Colonial Life had not acted in bad faith and had genuine legal issues upon which to base their denial of coverage. The court also found that while Colonial Life could afford to pay the attorney's fees award, the uniqueness of the circumstances greatly diminished the deterrent effect

---

[7]The five factor test is as follows: "(1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of attorney's fees, (3) whether an award of attorney's fees would deter other persons who will be acting under similar circumstances, (4) whether the party seeking attorney's fees sought to benefit all participants in an ERISA plan or to resolve a significant legal question under ERISA, and (5) the relative merits of the parties positions." *Pitts,* 931 F.2d at 358.

of the ruling and the Ramsey's suit had no applicability to other ERISA participants. Because we cannot say these findings are so erroneous to represent an abuse of discretion, we affirm the denial of attorney's fees.

## III. Conclusion

The judgment of the district court is AFFIRMED.