United States Court of Appeals
Fifth Circuit

**F I L E D**

May 6, 2003

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

**For the Fifth Circuit**

No. 01-41094

INTERNATIONAL PAPER COMPANY,

Plaintiff - Counter Defendant -

Third Party Defendant - Appellee,

VERSUS

RICHARD N. FRAME, ET AL.,

Defendants,

RICHARD N. FRAME; B. A. KENNEDY, individually, doing business

as Kennedy Specialty Lumber; JULIE ANN KENNEDY, individually,

doing business as Kennedy Specialty Lumber,

Defendants - Counter Claimants -

Third Party Plaintiffs - Appellants.

Appeals from the United States District Court
for the Eastern District of Texas
(2:98-CV-36)

Before DEMOSS, STEWART, and DENNIS, Circuit Judges.

1

DENNIS, Circuit Judge:[*]

The appellants' petition for panel rehearing is DENIED. The opinion of the court issued on April 8, 2003 is withdrawn, and the following is substituted:

In this appeal, defendants-appellants Richard N. Frame, B.A. Kennedy, and Julie Ann Kennedy appeal both the jury verdict holding them liable for conspiring to commit fraud, theft, breach of fiduciary duty, and breach of contract, and the district court's finding of joint and several liability and award of attorneys' fees and costs to plaintiff-appellee International Paper Company ("IP"). Because we do not have jurisdiction to consider Frame's untimely appeal of the final judgment, we DISMISS this portion of his appeal. But after considering the Kennedys' appeal of the final judgment, we AFFIRM the jury verdict and the district court's imposition of joint and several liability. In addition, we VACATE the district court's order awarding attorneys' fees and costs, and REMAND for re-entry of an attorneys' fees and costs award that excludes recovery for litigation expenses.

## I. Background

IP brought suit in the Eastern District of Texas based on diversity jurisdiction, asserting claims against Frame and the

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Kennedys for fraud, theft, and civil conspiracy. IP also sued Frame for breach of fiduciary duty and the Kennedys for breach of contract. The defendants counterclaimed for damages based on defamation, malicious prosecution, intentional infliction of emotional distress, civil conspiracy, breach of contract, and tortious interference with contract. These counterclaims were dismissed on summary judgment and have not been appealed.

Frame worked as a scaler at IP's Domino, Texas paper mill. Scalers are responsible for weighing trucks as they enter and exit the mill. As a truck enters the mill, the truck driver presents the scaler with a driver's ticket. The driver's ticket contains information about the type of wood delivered, the hauling company, the truck license tag, and the date of delivery. The truck driver, not the scaler, is the person responsible for completing and signing the driver's ticket. IP alleged that Frame had forged over 1,500 of these tickets between 1995 and 1997, which allowed the Kennedys, whose names were on the tickets, to receive payment for nonexistent loads of wood. After receiving an anonymous tip, IP set up surveillance at the mill. As a result of the investigation, IP pursued criminal charges against Frame and brought a civil suit against all three defendants. The criminal charges resulted in a mistrial and, ultimately, an acquittal, and the civil suit forms the basis of this appeal.

In July 2001, after a ten-day trial, the jury found for IP, holding the defendants liable on all claims. As a result, the jury awarded IP $500,000 in compensatory damages from Frame, $250,000 from B.A. Kennedy, and $250,000 from Julie Ann Kennedy. The jury also awarded IP $1 from each defendant as punitive damages.

On August 15, 2001, the district court entered a judgment on the merits, finding the defendants jointly and severally liable as co-conspirators. On August 29, 2001, Frame filed a motion to set aside the verdict or for a new trial. On the same day, IP filed a motion for attorneys' fees and costs. The court denied Frame's motion on October 1, 2001, but granted IP's motion for attorneys' fees and costs on October 16, 2001. Although the Kennedys filed their notice of appeal on September 13, 2001, Frame did not file his notice of appeal until November 13, 2001.

On appeal, the defendants jointly challenge: (1) the sufficiency of the evidence supporting the jury verdict, (2) the district court's finding that the defendants were jointly and severally liable, and (3) the district court's award of litigation expenses to IP. IP counters that (1) Frame's appeal of the first two issues must be dismissed because this court does not have jurisdiction, (2) the jury verdict was supported with sufficient evidence, and (3) the district court's holdings on joint and several liability and litigation expenses were proper.

## II. Analysis

4

A.    Frame's Notice of Appeal

We must first determine whether Frame timely filed his notice of appeal.[1]  If an appeal is untimely, we lack jurisdiction to consider it, and the appeal will be dismissed.  *First Nationwide Bank v. Summer House Joint Venture*, 902 F.2d 1197, 1199 (5th Cir. 1990)("Time limits for filing a notice of appeal are 'mandatory and jurisdictional.'").  IP contends that Frame's appeal of the final judgment was untimely because it was not filed within thirty days after the district court denied his motion to set aside the verdict or for a new trial.  Frame counters that his appeal was timely because it was filed within thirty days after the district court granted IP's motion for attorneys' fees and costs.

Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure provides that "the notice of appeal must be filed within 30 days after the judgment appealed from or ordered is entered."  However, Rule 4(a)(4) outlines several exceptions to this rule.  In particular, Rule 4(a)(4)(A)(iv) provides that if the party timely files a motion to alter or amend the judgment under Rule 59 of the Federal Rules of Civil Procedure ("FRCP"), then the time for appeal runs from the date the district court disposes of that motion.

---

[1]    Although the defendants jointly filed their briefs, the Kennedys and Frame filed separate notices of appeal.  The Kennedys filed a joint notice of appeal on September 13, 2001, which is within thirty days of the final judgment entered on August 15, 2001.  Therefore, their appeal of the final judgment was timely.

5

Similarly, Rule 4(a)(4)(A)(iii) provides that a motion for attorneys' fees under Rule 54 of the FRCP will have the same effect "if the district court extends the time to appeal under [FRCP] Rule 58." But Rule 4(a)(4)(A)(iii) does not require the district court to order such an extension under FRCP Rule 58(c)(2).

In this case, there were two post-trial motions that potentially could have affected the timeliness of Frame's notice of appeal: his Rule 59 motion and IP's Rule 54 motion. But because the district court did not order pursuant to Rule 58(c)(2) that IP's motion alter the defendant's time to appeal, that motion did not have the effect of a Rule 59 motion. *See* FED. R. APP. P. 4(a)(4)(A)(iii); FED. R. CIV. P. 58(c)(2); *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 201-03 (1988); *Echols v. Parker*, 909 F.2d 795, 798 (5th Cir. 1990). Hence, the only relevant date in calculating the timeliness of Frame's notice of appeal is October 1, 2001, the date on which the district court denied his Rule 59 motion. His notice of appeal was therefore untimely when it was filed on November 13, 2001, which was fourteen days after the deadline passed.

Frame further contends that our decision in *Ramsey v. Colonial Life Insurance Co.*, 12 F.3d 472 (5th Cir. 1994), requires us to extend the time period for appeal. In *Ramsey*, the final judgment included a denial of an attorneys' fees award, and the plaintiffs

6

filed a motion for reconsideration solely on the issue of attorneys' fees. *Id.* at 476. The plaintiffs then appealed within thirty days after the motion for reconsideration was denied. *Id.* at 474. The *Ramsey* court held that the appeal was timely because the final judgment expressly decided the issue of attorneys' fees. *Id.* at 477-78. Therefore, the motion in *Ramsey* was not a request for attorneys' fees, but rather a Rule 59 motion seeking reconsideration of the final judgment. *Id.* Here, the district court's entry of judgment on the merits did not discuss or even mention the attorneys' fees issue. Thus, IP's motion for attorneys' fees cannot be considered a Rule 59 motion because IP's motion did not request either a new trial or alteration of the judgment. Therefore, the *Ramsey* decision is inapplicable.

Because Frame did not appeal the final judgment in a timely fashion, we are without jurisdiction to consider his appeal of this judgment. Therefore, we dismiss this portion of his appeal. Although we dismiss Frame's appeal of the final judgment, we will consider the Kennedys' challenge to both the sufficiency of the evidence supporting the jury verdict and the district court's decision to impose joint and several liability.

B.   Sufficiency of the Evidence

The Kennedys request that we reverse the jury's verdict and enter judgment as a matter of law ("JMOL") pursuant to FRCP Rule

7

50, holding that IP take nothing in this suit because it has not introduced sufficient evidence to support the jury verdict. When considering a Rule 50 motion for JMOL following a jury verdict, we must be "especially deferential" to the jury's findings. <u>Brown v. Bryan County, Okla.</u>, 219 F.3d 450, 456 (5th Cir. 2000). We may grant a JMOL only where upon reviewing the entire record, we find that there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party on an issue. FED R. CIV. P. 50(a). In evaluating the record, we must make all reasonable inferences for the non-moving party, and disregard all evidence from the moving party that a jury is not required to credit. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). And of course, we must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

IP has brought four different claims against the Kennedys: fraud[2], theft[3], breach of contract[4], and engaging in a civil

---

[2] To prove fraud under Texas law, a plaintiff must show: (1) the defendant made a material representation; (2) the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion; (3) the misrepresentation was made with the intention that it should be acted on by the other party; and (4) the other party acted in reliance on the misrepresentation and thereby suffered injury. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847

conspiracy with Frame to commit these acts.[5]  The Kennedys contend that IP failed to provide sufficient evidence to prove that they were liable for these claims.  We disagree.

During the ten-day trial, IP introduced the following evidence: (1) two anonymous letters, which alerted IP that the defendants were defrauding the company; (2) 1,589 drivers' tickets, which resulted in over $1 million in payments to the Kennedys; (3)

---

S.W.2d 218, 222 (Tex.1992); *Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex.1998).

[3]    Under the Texas Theft Liability Statute, a person is liable for the damages resulting from his or her theft.  TEX. CIV. PRAC. & REM. CODE § 134.003(a).  A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property."  TEX. PENAL CODE § 31.03(a).  The appropriation of property is unlawful if: "(1) it is without the owner's effective consent" or "(2) the property is stolen and the actor appropriates the property knowing it was stolen by another."  *Id.* 31.03(b).

[4]    To prevail on a breach of contract claim under Texas law, a plaintiff must prove (1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach.  *Prime Products, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 637 (Tex. App. 2002);  *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 593 (Tex. App. 2000).

[5]    A civil conspiracy is, "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means."  *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex.1979).  The essential elements for proving a civil conspiracy claim are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.  *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983).

a handwriting expert's testimony, which certified that Frame's handwriting was on all but two of these tickets; (4) videotape surveillance and scaler timecards, which established that during Frame's shift the number of trucks entering the mill and scale house was significantly less than the number of tickets issued; (5) raw scale ticket data, which showed that IP paid for more wood than it received; (6) a certified fraud examiner's testimony, which demonstrated that the license plates listed on the driver's tickets were either nonexistent or corresponded to vehicles that were not able to carry large amounts of wood, such as boats and motorcycles; (7) the defendants' income tax returns and bank account information, which proved that the Kennedys had over $1 million and Frame $450,000 in unreported income; (8) a certified public accountant's testimony, which established that the cash withdrawals made by the Kennedys approximated Frame's unreported income; and (9) Frame's salary information, which showed that he earned only $25,000 a year as a scaler.

The above evidence is sufficient to prove IP's theory that the Kennedys conspired to steal from IP for purposes of financial gain. From this evidence, the jury could have inferred the following: (1) Frame filled out over 1,500 tickets, which resulted in the Kennedys receiving over $1 million; (2) IP did not receive any wood for these tickets; and (3) the Kennedys and Frame split the proceeds from this scheme.

This evidence supported the jury's finding that the Kennedys were liable to IP for fraud, theft, breach of contract, and engaging in a civil conspiracy with Frame to commit the same. First, there is sufficient evidence to establish the fraud claim. The evidence shows that the Kennedys, by requesting payment for the drivers' tickets, intentionally made a material representation to IP that IP owed them payment for wood with the purpose of inducing IP to rely on this representation to pay the Kennedys for non-existent materials. Second, IP provided sufficient evidence to prove theft. The evidence proves that the Kennedys unlawfully appropriated the money received for the false drivers' tickets without IP's effective consent with the intent to permanently deprive IP of these funds. Third, IP had sufficient evidence to establish a valid breach of contract claim. The Kennedys had a contract with IP that required IP to pay the Kennedys for the wood that they provided. IP rendered performance by providing payment, but the Kennedys breached this agreement by failed to provide the wood. Fourth, IP sufficiently proved a civil conspiracy between the Kennedys and Frame. The evidence demonstrates that the defendants devised a scheme to unlawfully defraud and steal money from IP, resulting in at least a $1 million loss to IP. Therefore, IP has provided sufficient evidence to establish the elements of

11

all its claims.[6]

The Kennedys' argue that there were a number of specific items that IP did not prove at trial.[7] But none of these items, with the exception of damages, are elements of any claim brought by IP. Therefore, because IP is not required to prove these items in order to prevail, this argument is without merit.

As for damages, the Kennedys contend that IP failed to prove its losses because the jury awarded an even amount of $1 million. They argue that the jury's failure to award damages equal to the value of the disputed drivers' tickets proves that IP failed to offer evidence of damages with sufficient accuracy. *See Coursey v. Broadhurst*, 888 F.2d 338, 345 (5th Cir. 1989)(requiring "such proof of damages as the nature of his case permitted, with as much accuracy as was reasonably possible").

---

[6] The Kennedys' only rebuttal to this evidence is Frame's self-serving testimony that his unreported income was from gold coins and family money. But this was not supported by any other evidence. In addition, IP contradicted Frame's testimony by introducing a 1994 financial statement by Frame to Marine Military Academy, which failed to list the family money and gold coins as assets. Therefore, under *Reeves*, we can disregard Frame's testimony because the jury is not required to credit this evidence. More significantly, the Kennedys introduced no evidence to show that IP received any wood in exchange for the payments that they received.

[7] The Kennedys argue that IP failed to prove: (1) whether the Kennedys owned the trucks shown on the videotape surveillance, (2) whether Frame forged the tickets or had permission from the drivers,(3) whether Frame and the Kennedys ever met outside of the mill's scale house, and (4) the specific amount of IP's losses.

However, IP did provide accurate evidence of its losses. The drivers' tickets themselves are sufficient to establish that IP lost at least $1 million. The jury's award was not more precise because IP could not definitively prove that IP paid the Kennedys for all of the drivers' tickets. Therefore, the jury had some discretion in awarding IP less in damages than the face value of the tickets. In addition, even if IP could not prove the exact amount of damages, "[a] defendant whose wrongful act creates the difficulty is not entitled to complain that the amount of the damages cannot be accurately fixed." *Austin v. Parker*, 672 F.2d 508, 522 (5th Cir. 1982). Damages are difficult to prove here because the defendants engaged in a clandestine operation to defraud IP utilizing fraudulent materials and cash transactions. That they did not keep accurate records of their activities should not be held against the plaintiff. Therefore, the Kennedys' argument is not persuasive.

Despite the Kennedys' arguments, IP has provided a legally sufficient evidentiary basis for a reasonable jury to find in its favor. Therefore, we affirm the jury's verdict in favor of IP on its claims against the Kennedys.

C.  Joint and Several Liability

The Kennedys next contest the district court's decision to impose joint and several liability. They contend that under Texas law, the court could only have imposed joint and several liability

for the theft claim.  TEX. CIV. PRAC. & REM. CODE § 134.005; *Id.* §
33.002(b).  Therefore, they argue that because the damage award was
not divided into individual awards for fraud, theft, and breach of
contract, the amount of damages subject to joint and several
liability is not determinable and thus joint and several liability
is not proper for any of the award.

However, this argument is incorrect.  The final judgment
states that the defendants are jointly and severally liable because
the jury found that the defendants were co-conspirators.  Under
Texas law, proof of civil conspiracy "imposes joint and several
liability on all co-conspirators for any actual damages resulting
from acts in furtherance of the conspiracy."  *Hart v. Moore*, 952
S.W.2d 90, 98 (Tex. App. 1997); *see also Akin v. Dahl*, 661 S.W.2d
917, 921 (Tex. 1983); *Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir.
2000).  As co-conspirators, the defendants are joint and severally
liable for all damages because the acts of fraud, theft, and breach
of contract were all in furtherance of the conspiracy.
Consequently, the district court properly found the defendants
jointly and severally liable for the entire amount of damages.

D.  Litigation Expenses

Frame's failure to timely file an appeal of the merits does
not dismiss his entire appeal.  Frame, along with the Kennedys, can
still challenge the district court's award of litigation expenses

14

to IP.  Because Frame filed a notice of appeal within thirty days of entry of the district court's order awarding these expenses, this part of his appeal is timely.

On August 29, 2001, IP filed a motion for an award of attorneys' fees and costs pursuant to the Texas Theft Liability Act.  *See* TEX. CIV. PRAC. & REM. CODE § 134.005.  In its motion, IP requested $1,453,452.00 in attorneys' fees, $431,978.23 in litigation expenses, and $137,919.90 in costs for a total of $2,023,350.10.  On October 15, 2001, the district court awarded IP $982,813.00 in attorneys' fees and $414,875.20 in costs for a total of $1,397,688.20.  In awarding this amount, the district court discounted the total requested by IP because of insufficient documentation and because some fees and costs were attributable to IP's role in Frame's bankruptcy and criminal prosecution, not the civil litigation.

The defendants have not challenged either the $982,813.00 awarded in attorneys' fees or $137,919.90 in costs.  Instead, they challenge the award of litigation expenses, which they argue cannot be awarded under § 134.005 of the Act.  They seek to reduce the award of costs by $276,955.30, which is the difference between the $414,875.20 awarded by the court as costs and the $137,919.90 in costs requested by IP.  This would reduce the IP's award of attorneys' fees and costs to $1,120,732.90.  In response, IP counters that litigation expenses customarily billed to clients may

15

be properly awarded as part of an attorneys' fees award, not as court costs. Therefore, it argues that the district court mischaracterization of the litigation expense award as costs is insufficient to prove that the court improperly awarded IP these expenses.

State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Because the trial court has discretion to award attorneys' fees and costs, we will review their decision for abuse of discretion, although factual determinations will only be reviewed for clear error. *Id.* at 461-62.

As a successful plaintiff in a suit under the Texas Theft Liability Act, IP has the right to recover "court costs and reasonable and necessary attorneys' fees." TEX. CIV. PRAC. & REM. CODE § 134.005. Recoverable court costs include: deposition costs, filing fees, court reporter fees, transcripts, and subpoena/citation fees. *Id*. § 31.007(b); *Crescendo Investments, Inc. v. Brice*, 61 S.W.3d 465, 480-81 (Tex. App. 2001). However, the following items are not recoverable as court costs: "delivery services, such as Federal Express; travel; long-distance phone calls; bond premiums; postage; reproduction expense; binding of brief[s] ... office air conditioning, and secretarial overtime."

16

*Shenandoah Assoc. v. J&K Prop., Inc.*,741 S.W.2d 470, 487 (Tex. App. 1987).

In submitting its request for attorneys' fees and costs, IP separated its non-attorneys' fees expenses into two categories: court costs and litigation expenses. The court costs category included items that were properly recoverable as court costs, including deposition costs, filing fees, and subpoena/citation fees. In contrast, the litigation expenses category consisted solely of items that are not recoverable as court costs, including telephone and fax charges, travel expenses, Federal Express charges, and photocopying fees.

In seeking recovery for these expenses, IP does not contend that the litigation expenses are recoverable as court costs. Rather, it argues that these expenses are recoverable as part of a reasonable attorneys' fees award. In support of this argument, IP notes that federal courts have allowed parties to recover litigation expenses that "are normally charged to a fee paying client, in the course of providing legal services" as part of an attorneys' fee award. *See Chemical Mfrs. Assoc. v. EPA*, 885 F.2d 1276, 1283 (5th Cir. 1989); *see also Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 37 (D.C. Cir. 1984); *Northcross v. Board of Educ. of the Memphis City Schools*, 611 F.2d 624, 639 (6th Cir. 1979). However,

17

these decisions concerned awards of attorneys' fees under federal law. Here, because the attorneys' fees award is based on a Texas statute, what the statute allows is determined by Texas law. *See Lasalle Bank Nat'l Ass'n v. Sleutel*, 289 F.3d 837, 839 (5th Cir. 2002); *Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000). IP has not provided any authority under Texas law for including these litigation expenses as part of its attorneys' fees award, and we have found none. Therefore, we find that the district court abused its discretion in awarding IP $276,955.30 in litigation expenses. Consequently, the award of attorneys' fees and costs is vacated. On remand, the district court shall award attorneys' fees and costs to IP that exclude recovery for these litigation expenses.

### III. Conclusion

Because we lack jurisdiction to consider Frame's appeal of the final judgment, we DISMISS this portion of his appeal. But after considering the Kennedys' appeal of the final judgment, we AFFIRM the jury verdict and the imposition of joint and several liability on the defendants. In addition, because Texas law does not allow litigation expenses to be recovered as attorneys' fees or court costs, we VACATE the district court's award of attorneys' fees and costs, and REMAND for re-entry of an award totaling $1,120,732.90.