**Allan G. CHARLES, et al.,**
**Plaintiffs-Appellees,**

v.

**Richard M. DALEY, State's Attorney,**
**et al., Defendants,**

**and**

**Eugene F. Diamond, et al., Intervening**
**Defendants-Appellants.**

**No. 86–1552.**

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 11, 1986.

Decided Aug. 25, 1986.

Edward R. Grant, Maura K. Quinlan, Americans United For Life Legal Defense Fund, Chicago, Ill., for intervening defendants-appellants.

Colleen K. Connell, Roger Baldwin Fnd. of ACLU, Chicago, Ill., Frank Susman, Susman Schermer Rimmel & Parker, St. Louis, Mo., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, and BAUER and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

This is the tail end of *Diamond v. Charles*, — U.S. —, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), in which the Supreme Court held that Eugene Diamond, a physician, had no business prolonging a suit filed by Allan Charles to challenge a statute dealing with abortion. Diamond, to-gether with Jasper Williams (another physician) and David Campbell, a putative father, had intervened to defend the statute and, when the district court held the statute unconstitutional, took the case to this court and the Supreme Court. They lost on the merits in this court, and Diamond, who alone sought further review, lost on jurisdictional grounds in the Supreme Court. Meanwhile, the district court entered an award of more than $200,000 (counting interest to date) in attorneys' fees under 42 U.S.C. § 1988 to Charles and the other prevailing plaintiffs. The award was entered on October 1, 1984, and was immediately appealable. See *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); *Exchange National Bank v. Daniels*, 763 F.2d 286, 291–94 (7th Cir.), reheard in part on other grounds, 768 F.2d 140 (1985). The appeal was not filed until April 1986, and the plaintiffs say that this comes too late.

The order of October 1, 1984, awarded fees but did not say who was to pay them. The accompanying opinion said that the "defendants" would pay, but the opinion also referred to the three intervenor-defendants as "intervenors." On one reading of the order the intervening defendants had become jointly and severally liable for $200,000. On another they were not liable at all. On October 9, 1984, the intervenors filed a motion under Fed.R.Civ.P. 59(e) asking both for clarification of the order and, if they were included as "defendants", for alteration. This timely motion suspended the finality of the judgment and precluded appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); cf. *Acosta v. Louisiana Department of Health and Human Resources*, — U.S. —, 106 S.Ct. 2876, 92 L.Ed.2d 192 (1986).

On April 22, 1985, the district court entered an order stating: "The intervenor-defendants' motion to clarify and amend the Memorandum Opinion [sic] issued September 28, 1984 is denied. Plaintiffs [sic] fees and costs will be borne equally by the

defendants: half by the State defendants and half by the intervenors." This contradictory order both "denied" the motion and amended the judgment. Moreover, an accompanying opinion stated that the court viewed the Americans United for Life Legal Defense Fund as one of the intervening defendants. The Fund is a law firm, which represented the three intervenors and had not itself intervened as a party (although some of the documents in the district court erroneously showed it to be one).

The order of April 22, read in conjunction with the opinion, was the first award of fees against the Fund, and it probably made the three actual intervenors worse off too. They might plausibly have supposed that the plaintiffs would collect the $200,000 from the government of Illinois, whose pockets are deeper than those of two physicians and a putative father. The amendment to the judgment ensured that the intervenors would pay at least $100,-000. On May 2, 1985, the Fund served a document styled "Motion to Amend the Judgment Pursuant to Fed.R.Civ.P. 59(e)." The Fund asked the district court to make it a full-fledged defendant and to relieve the three intervenors of liability. The Fund represented that it had solicited the three intervenors to participate and that it would therefore be unjust to require them to pay fees. It also represented that it was "prepared to accept financial responsibility for any award of attorney's fees which is ultimately assessed against it by this or any other court on the basis of its status as an Intervening Defendant."

This was the Fund's first effort to seek relief from anything. The Fund had not been identified as a defendant in the order of October 1, 1984, for the plausible reason that the Fund was not one. But the three individual intervenors did not complain of the alteration of the judgment that arguably injured them; they simply recited (as they had back in October 1984) that they should not pay anything. Theirs was a successive request for the same relief. And the Fund's request was most curious. It could have "accept[ed] financial responsibility" without an alteration of the judg-

ment. All it had to do was tender payment to the plaintiffs, thereby discharging the intervenors' liability. If the plaintiffs would not accept the Fund's check, preferring to hector the intervenors, the Fund was free to reimburse whichever intervenor was called on to pay. So the Fund's request did not seek from the court anything—for itself or for the intervenors—that the court alone was in a position to provide.

The only thing to be said for the motion is that the Fund at least asked the court to "alter or amend" the judgment, the operative words in Rule 59(e). The plaintiffs complicated things still further by opposing the Fund's motion. They contended in open court on May 9 that the intervenors were the only parties and that the Fund should be confined to its role as law firm. Counsel for the plaintiffs asked the court for 21 days to file a written opposition to the motion; the court granted the time. This led counsel for the intervenors to express concern about the effect of further deliberations on appellate jurisdiction:

> [Counsel for the intervenors]: ....
> Since this could technically be considered the second clarification of your original order ... on the attorneys' fees, I just wanted to ask if it is clear to everybody here—including your Honor—that the time for filing a Notice of Appeal, that may or may not be filed from your ultimate decision, is stayed until you have ruled on this motion—until we are clear who the parties are.
>
> THE COURT: I suppose it would. I do not see why it should not await a final, final resolution; although, I suppose, you have to quit coming in to amend the matter.... I think that it would be a fair conclusion to be drawn ... that any appeal clock does not run until we finally dispose of this particular motion. That is my sense of the matter.

The district judge took the Fund's motion under advisement. In July 1985, before the court had acted, the Fund tried to file still another motion to alter the judgment.

The new motion called the court's attention to *Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), which had been decided two weeks before. The Fund maintained that under *Graham* only parties liable on the merits may be required to pay attorneys' fees. Because only the governmental defendants were answerable on the merits, the Fund asserted, neither it nor the intervenors could be required to pay the plaintiffs' attorneys' fees. The plaintiffs disagreed with the Fund's interpretation of *Graham.* In open court on July 12, 1985, the district court stated:

Here is what we will do. I do not think I am going to give you leave to file this motion. There is not any additional briefing necessary. All it is, is for me to evaluate Kentucky vs. Graham and see if, indeed, its holding applies here of it it is inoppsite [sic], as counsel has argued, and that is all we need to do. No briefing is necessary.

The judge later changed his mind. A minute order dated October 21, 1985, and entered the next day, states: "The Court clarifies the order of April 22, 1985. The [sic] sets a briefing schedule on intervenors' motion to amend in light of *Kentucky v. Graham.* . . . The Court will rule by mail." An accompanying opinion explained that the Fund had not intervened and that any earlier papers naming it as a party had been clerical errors. The Fund could not intervene, the court held, because as a law firm it had no interest in the outcome of the case. Fed.R.Civ.P. 24, which governs intervention, would not allow the Fund to be a party given its lack of interest in the merits. The court then stated that it would correct earlier papers under Fed.R.Civ.P. 60(a), which allows the correction of clerical errors at any time, and that the order of April 22 also would be corrected under Rule 60(a) to read: "Plaintiffs' fees and costs will be borne equally by the defendants: half by the State defendants and half by the intervenors—Williams, Diamond, and Campbell." As for the Fund's willingness to cover the intervenors' liability, the court wrote: "The intervenors and their counsel

may make whatever private arrangements they wish to satisfy the judgment."

This was the second alteration of the order. (The first apportioned the fees; the second deleted the Fund as a party and explicitly named the three intervenors.) But the alteration was not embodied in a separate document under Fed.R.Civ.P. 58. The minute order referred to the opinion, but judgments must be self-contained. More, the court asked for briefs on the application of *Kentucky v. Graham.* So as of October 1985 the court had not finally disposed of the Fund's motion. It had moved on to a new issue—an issue that we must treat as introduced by the court on its own motion, because it denied the Fund's motion for leave to file a third motion under Rule 59.

On March 6, 1986, the district judge held that *Graham* does not relieve the intervenors of liability for attorneys' fees. The intervenors filed an appeal on April 4. The plaintiffs ask us to dismiss the appeal on the ground that it is untimely. The plaintiffs say that the time started to run on April 22, 1985, when the judge acted on the first Rule 59 motion. The successive motion did not toll the time—both because it was really a motion under Rule 60(a) and because only the first motion under Rule 59 stops the clock. The district judge's statement to the contrary was ineffectual, plaintiffs say, but if it did suspend the finality of the judgment the time began to run on October 22, 1985, when the court decided the Fund's pending motion. The invitation to file further briefs in November, according to the plaintiffs, did not contain a new promise that the intervenors were safe in not appealing.

■ As we see it, if the Fund's motion in May 1985 stopped the clock, the appeal is timely. The district judge did not enter an order in October 1985 altering the judgment, and until one was entered on a separate document, the time did not restart. See *United States v. Indrelunas,* 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973); *Stelpflug v. Federal Land Bank,* 790 F.2d

47 (7th Cir.1986); *Exchange National Bank,* 763 F.2d at 290; *Parisie v. Greer,* 705 F.2d 882 (7th Cir.) (en banc), *cert. denied,* 464 U.S. 950, 104 S.Ct. 366, 78 L.Ed.2d 326 (1983). A minute order suffices when the judge denies a request to alter the judgment, for then the original judgment remains in effect. Here, however, the original judgment has been amended twice, and until the effective judgment is set forth on a separate sheet of paper, the time is suspended. The district judge evidently shares our view that in November he was not done with the motion. He called for additional briefs on what was by then his own introduction into the case of issues arising from *Graham.* A judge may enlarge the issues to be considered in acting on a timely motion under Rule 59. *United States v. Hollis,* 424 F.2d 188, 191 (4th Cir.1970); 11 Wright & Miller, *Federal Practice and Procedure* § 2817 at 192 n. 34 (1969). He did so here, denying the Fund's motion to add new issues but raising the question himself. So the decision of March 6, 1986, is the final disposition of the motion filed on May 2, 1985.

The Fund's motion of May 2 suspended the finality of the judgment, however, only if it complied with Rule 59(e). The plaintiffs say that it did not, because it was really a motion under Rule 60(a) to correct a clerical error. This is how the district court ultimately treated it. The characterization of post-judgment motions has been a vexing one, because the selection of the rule on which the motion is based determines appellate jurisdiction. We have wrestled in a series of cases with nettlesome problems of characterization, have implored counsel to be clearer, and have made little headway. E.g., *Bank of California N.A. v. Arthur Andersen & Co.,* 709 F.2d 1174 (7th Cir.1983). Questions of jurisdiction should be clear—to the parties, so that they do not forfeit appeals by accident, and to the courts, which ought not be confronted with enervating disputes that detract from the time available to deal with cases on their merits. The Fifth Circuit accordingly has adopted a rule that all substantive motions served within 10 days of the entry of a judgment will be treated as based on Rule 59, and therefore as tolling the time for appeal. *Harcon Barge Co. v. D & G Boat Rentals, Inc.,* 784 F.2d 665 (5th Cir.1986) (en banc). We have nothing to add to *Harcon* and adopt it as the rule in our court. Earlier cases anticipated this holding. E.g., *Western Industries, Inc. v. Newcor Canada Ltd.,* 709 F.2d 16, 17 (7th Cir.1983). See also 9 *Moore's Federal Practice* ¶ 204.12[1], 4–67 (1985).

The motion of May 2, 1985, was substantive. Rule 60(a) is designed to correct scriveners' errors, to make the judgment carry out the original plan. See *United States v. Griffin,* 782 F.2d 1393 (7th Cir. 1986). The Fund wanted something more than a correction. It would be a correction of a scrivener's error to take the Fund *out* of the case, as the district court did. But the Fund wanted *in,* more than it had been so far, and wanted the intervenors excused from paying fees. This request, if granted, would have been a substantive change. Under *Harcon* the motion is treated as filed under Rule 59(e), just as its caption said.

■ This leaves the question whether a Rule 59 motion filed on May 2 suspended the finality of the judgment. A timely motion filed under Rule 59 does this, see Fed.R.App.P. 4(a)(4), but successive motions do not affect the finality of the judgment. E.g., *American Security Bank N.A. v. John Y. Harrison Realty Co.,* 670 F.2d 317 (D.C.Cir.1982); *Wansor v. George Hantscho Co.,* 570 F.2d 1202 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978). Motions under Rule 59 must be filed within 10 days to be timely. *Browder v. Director, Department of Corrections,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 52 (1978); *Bailey v. Sharp,* 782 F.2d 1366 (7th Cir.1986); cf. *Martinez v. Trainor,* 556 F.2d 818 (7th Cir.1977) (a motion stating no reasons is the same thing as no motion). The time limit would be a joke if parties could continually file new motions, preventing the judgment from becoming final. The 10 days runs from the initial judgment, so later motions are not

timely. Yet the purpose of Rule 59 is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings. See *United States v. Dieter,* 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976). The purpose of the rule suggests that when a court *alters* its judgment, a person aggrieved by the alteration may ask for correction. A successive motion directed to the same judgment is ineffectual, but when there is a new judgment—an alteration independently sufficient to restart the time for appeal—there is also a new period in which to file a motion under Rule 59.

*Dieter,* although a criminal case, supports this conclusion. A district court first refused to suppress evidence and then, on the defendant's motion for reconsideration, reversed ground. The prosecutor filed a motion for reconsideration, the second in the case. The Supreme Court held that this motion tolled the time to appeal. It pointed out that the district court should have the opportunity to hear the arguments of the party aggrieved by the change, in order to correct its own judgments to the extent possible. Several courts have applied this approach to Rule 59, holding that when the district court alters a judgment in response to one Rule 59 motion a successive petition is timely. E.g., *Harrell v. Dixon Bay Transportation Co.,* 718 F.2d 123, 126–29 (5th Cir. 1983).

The plaintiffs distinguish these cases on the ground that they, like *Dieter,* involve Rule 59 motions by the party that had prevailed the first time around; here the same parties filed successive motions. This is not quite right. The intervenors filed the first motion, and the Fund filed the second. However that may be, it is a distinction without a difference. The timeliness of the successive motion comes from the alteration of the judgment. A significant change in a judgment starts all time periods anew, whether the district court alters the judgment at the request of a party or on its own motion. See *FTC v. Minneapolis-Honeywell Co.,* 344 U.S. 206, 211, 73 S.Ct. 245, 248–49, 97 L.Ed. 245 (1952). The ability to file a new motion under Rule 59 comes from the fact that an altered judgment is a "new judgment" with new periods of time, and not from the identity of the party filing the paper.

The sort of alteration that restarts all periods of time is one that "changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered". *Minneapolis-Honeywell,* 344 U.S. at 211, 73 S.Ct. at 248–49. See also *Exchange National Bank,* 763 F.2d at 289. Moreover, when portions of a judgment are related, an alteration of one portion restarts the time with respect to all portions. *United States v. Adams,* 383 U.S. 39, 41–42, 86 S.Ct. 708, 709–10, 15 L.Ed.2d 572 (1966). See also Stern, Gressman & Shapiro, *Supreme Court Practice* 314–16 (6th ed. 1986). There was a "genuine ambiguity" in the original order, and on April 22 the court not only dispelled the ambiguity but made two substantive changes: it divided liability among the groups of defendants, and it identified the Fund as a "defendant" jointly and severally liable. This was enough to make the judgment a new one, affording aggrieved parties time to seek alteration or to appeal. The Fund's motion called for complete reconstruction of the private parties' half of the judgment, and the three intervenors could not be expected to appeal while the Fund's motion was pending. The motion of May 2 therefore tolled the time for the three intervenors to appeal. This makes the appeal filed in April 1986 timely without regard to the district court's assurances of May 9. We express no views on the effect, if any, these assurances may have had. See *Bailey v. Sharp; Wort v. Vierling,* 778 F.2d 1233 (7th Cir.1985).

The motion to dismiss the appeal is denied. The case will proceed to briefing and decision on the merits.