the issue of pattern or practice could be revisited and, yet, the parties failed to object to this broadened inquiry for the Stage II hearing.[2]  Accordingly, Judge Gwin was entitled to revisit, amend or alter the earlier determinations and his subsequent ruling did not trigger law-of-the-case consequences.

Accordingly, for the above stated reasons, I respectfully CONCUR in the judgment rendered by the majority.

---

[2]Presumably, Plaintiff-Intervenors did not object to the widened scope of inquiry because they believed that any determinations made in the Stage II hearing would inure to their benefit.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0413P (6th Cir.)
File Name:  00a0413p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
 *Plaintiff-Appellant (98-3986),*

GEORGE D. EDWARDS;
KENNETH JACKSON; MELVIN
L. SEALEY; ALVIN
WOODFORD; VERA
HAMILTON; CHARLES YOUNG;
DAVID STEWART;
HARLAND JONES; ROBIN
HARDWICK; MONTY RATES;
RUDOLPH GILLEN;
JAMES GARNER, and all others
similarly situated,
             *Intervening*
      *Plaintiffs-Appellants*
                *(98-3935),*


             *v.*


UNITED ASSOCIATION OF
JOURNEYMEN AND
APPRENTICES OF THE
PLUMBING & PIPEFITTING
INDUSTRY OF THE UNITED

Nos. 98-3935/3986

1

STATES AND CANADA, LOCAL NO. 120, et al.,

     *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 68-00473—James S. Gwin, District Judge.

Argued: August 8, 2000

Decided and Filed: December 15, 2000

Before: KEITH, SILER, and BATCHELDER, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** Bruce B. Elfvin, ELFVIN & BESSER, Cleveland, Ohio, Robert J. Gregory, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., for Appellants. Frank D. Celebrezze, McNEAL, SCHICK, ARCHIBALD & BIRO, Cleveland, Ohio, for Appellees. **ON BRIEF:** Bruce B. Elfvin, Barbara Kaye Besser, Amy S. Glesius, ELFVIN & BESSER, Cleveland, Ohio, Robert J. Gregory, OFFICE OF THE GENERAL COUNSEL, Washington, D.C., for Appellants. Frank D. Celebrezze, McNEAL, SCHICK, ARCHIBALD & BIRO, Cleveland, Ohio, Nancy J. Fleming, Lakewood, Ohio, for Appellees.

SILER, J., delivered the opinion of the court, in which BATCHELDER, J., joined. KEITH, J. (pp. 18-20), delivered a separate opinion concurring in the judgment.

interpretation of an inordinate amount of testimonial and statistical evidence, could be overturned as clearly erroneous. Indeed, the Supreme Court has held that

[I]f the district court's account of the evidence is plausible in light of the record *viewed in its entirety*, the court of appeals [and coordinate courts] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. ... This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical documentary evidence or inferences from other facts.

*Anderson v. Bessemer City*, 470 U.S. 564, 573-574 (1985)(emphasis added) (citations omitted). *See also Owens-Illinois, Inc. v. Aetna Casualty & Surety Company*, 990 F.2d 865, 870 (6th Cir. 1993).

The instant matter, however, is factually distinct from the extraordinary circumstances that are normally required to overturn a court's evidentiary findings. District Court Judge Thomas granted the Plaintiff-Intervenors' motion to "alter or amend" the judgment. It is long-settled that when a final judgment is reopened the judgment remains subject to the control of the court until the motion is disposed of and, until that time, does not become final. *See generally, e.g.,* Fed. R. App. Pro. 4(a)(4) (discussing the effect of a motion to alter or amend on a final order of judgment). *See also Kingman & Co. v. Western Mfg. Co.*, 170 U.S. 675 (1898). Moreover, once the judgment is reopened "[a] judge may enlarge the issues to be considered in acting under Rule 59." *Charles v. Daly*, 799 F. 2d 343, 347 (7th Cir. 1986). In this matter, as noted by the majority, Judge Thomas notified the "parties that his earlier finding of a pattern or practice of discrimination was subject to revision following the Stage II hearing." Consequently, Judge Thomas "put the parties on notice" that

---

**CONCURRENCE**

---

KEITH, Circuit Judge, concurring. Although I agree that the district court's opinion should be affirmed, I write separately to note my disagreement with the application of the law-of-the-case doctrine to reach this result.

The law-of-the-case doctrine "expresses the practice of the courts generally to refuse to reopen what has been decided." *Christansson, et al. v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). This Court has particularly recognized the import of this doctrine when a case is transferred from one judge to another "inasmuch as '[t]he utility of such a transfer would be seriously compromised if the fact of a transfer were to be treated as an invitation to seek a second opinion on every pre-transfer ruling... .'" *Gillig v. Advanced Cardiovascular Systems, Inc.*, 67 F. 3d 586, 590 (6th Cir. 1995)(quoting 1b JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.404[4.-2](2d ed.1994)). *See also Christansson,* 486 U.S. at 816 ("[T]ransferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation."). Accordingly, coordinate courts are instructed "to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983). To deem otherwise would undermine the strength of final determinations and would foster an air of paternalism. Under this construct, it is difficult to conceive how Judge Thomas's twenty year relationship[1] with the details of this case, coupled with his

---

[1]District Court Judge William K. Thomas entered the consent decree. Prior to the additional Rule 59 hearings, Judge Thomas, who had presided since 1972, retired. The case was transferred to Judge James S. Gwin.

---

**OPINION**

---

SILER, Circuit Judge.    Plaintiffs-Intervenors George Edwards, et al.("Intervenors"), appeal the denial of their request for individual relief against Defendants United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local 120, et al. ("Union"),  for violations of a consent decree's prohibition against employment discrimination. Plaintiff Equal Employment Opportunity Commission ("EEOC"), appeals the same ruling by the district court, insisting the ruling did not alter the court's prior finding that the Union had violated certain record-keeping and reporting requirements of the consent decree. Defendants Honeywell, Inc. and Johnson Controls, Inc. ("Honeywell and Johnson") appeal the order joining them as defendants to Intervenors' action and thereby subjecting them to the provisions of the consent decree. We AFFIRM and REMAND.

### BACKGROUND

This consolidated appeal primarily involves two actions which alleged  violations of a consent decree to which the Union was a party. The Union represents pipefitters in the construction industry and is a signatory to various collective bargaining agreements with the Mechanical Contractors Association. Under these agreements, the Union is the exclusive referral source for pipefitters to members of the Mechanical Contractors Association in the area surrounding Cleveland, Ohio. Because construction work is intermittent, contractors frequently supplement their workforce with referrals from the Union.

In 1968, the EEOC filed a complaint against the Union alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. In January 1972, the district court entered a consent decree containing various provisions

prohibiting the Union from "in any way limiting, segregating or classifying or otherwise adversely affecting [a journeyman's or pipefitter's] status as an employee or as an applicant for employment because of such individual's race or national origin." Intervenors, a certified class of black union members of the Union since January 1972, allege that this provision has been violated because white union members are routinely referred for work at higher rates and for longer durations than are black union members.

The consent decree also imposed various record-keeping and reporting requirements upon the Union. The Union was required to maintain out-of-work lists and to generally refer members for work in the order in which they registered. The major exceptions to this rule were that the Union was required to allow employers to recall former workers within certain time periods and to respond to requests for union members with specialized skills. Also included in the decree was the obligation that the Union provide and maintain a "master registration card" for each person seeking an employment referral. The master registration card was to note the date of referral, the name of the employer to whom the employee was referred, and the classification of the referral. Additionally, the Union was to provide a summary report at the end of each calendar quarter concerning these referral records.

In 1990, the EEOC sought an order requiring the Union to show cause why it should not be held in contempt for violating the record-keeping and reporting requirements of the consent decree. In 1992, the district court issued various orders holding the Union in civil contempt based upon, among other things, its failure to maintain a referral register and failure to maintain master registration cards. The district court ordered the Union to improve its record-keeping practices and to maintain in machine-readable form its members' out-of-work registrations and referrals on an individualized basis. Additionally, the district court found that the Union had engaged in a pattern or practice of discrimination in the operation of its work referral system that

attained without joining Honeywell and Johnson. Fed. R. Civ. P. 19(a).

AFFIRMED IN PART AND REMANDED IN PART.

parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and a fortiori may not impose duties or obligations on a third party, without that party's agreement. . . . And, of course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree.

*Id*. at 529.

The district court joined these defendant contractors to ensure complete relief on a prospective basis regarding the record-keeping and reporting requirements of the consent decree. The joinder of Honeywell and Johnson was not violative of procedural due process. Their joinder did not subject them to liability for past conduct. They are not being deprived of legal rights by a retroactive application of the terms of the consent decree. The impact of joining Honeywell and Johnson is *de minimus* and prospective. The district court joined these defendants to enforce the decree against the Union, not for the binding effect it would have on Honeywell and Johnson. Honeywell and Johnson were given notice and an opportunity to defend their positions when the EEOC moved to designate a class of defendant contractors that had utilized the Union's hiring hall. All of these facts distinguish this case from those relied upon by Honeywell and Johnson.

The joinder of Honeywell and Johnson under Fed. R. Civ. P. 19(a) was not an abuse of discretion by the district court. Numerous contractors that utilized the Union's hiring hall were not parties to the original consent decree. Thus, the Union's compliance with the decree, especially in light of the individual claims and lax reporting and record-keeping, was impossible to gauge when non-party contractors hired union workers. This consideration and the need to modify the decree as a result of the Union's alleged contempt justify the district court's concern that "complete relief" could not be

resulted in black union members receiving fewer overall work hours than white members. The district court declined to award specific compensatory damages because the nature and content of the evidence would not allow for any particular black union member to show that he was given a referral of a shorter duration than a white union member. However, the district court did order that the Union pay a coercive fine of $200,000. Of this $200,000 total, $100,000 would be reserved to pay individual damages and the balance would be distributed among the 106 black class members.

Additionally, the district court ordered that any class member who contended that he was intentionally passed over due to discrimination in the referral practice had to first file a written grievance with a joint hiring committee. Upon denial of that complaint, the class member could obtain de novo review in the district court. No class members filed any such grievance.

In October 1992, pursuant to Fed. R. Civ. P. 19(a) and 21, the district court ordered the joinder as defendants the contractors that utilized the Union's hiring hall to secure compliance with the consent decree's record-keeping and recording requirements. Honeywell and Johnson were among the contractors joined as defendants. The district court denied Honeywell's and Johnson's joint motion to dismiss on December 17, 1992.

These interlocutory orders became final upon the district court's entry of an opinion and final judgment dated December 22, 1992, in which the district court reaffirmed its prior rulings. Intervenors moved under Fed. R. Civ. P. 59(e) to amend the district court's order and for the award of individual relief. The district court granted this motion, holding that an additional, or "Stage II," hearing was to be held to determine what, if any, individual relief should have been awarded to Intervenors. The district court also stated that the Union had the burden of proof at the Stage II hearing and that the court would thereafter issue a final determination

as to whether any of the prior rulings of the district court would require modification.

In preparation for the Stage II hearing, Judge William K. Thomas supervised the depositions of the various expert witnesses. One witness was Dr. Rebecca Klemm, a court-appointed expert who was charged with assessing the Union's record-keeping and creating a database to evaluate the EEOC's and Intervenors' claims. Following the completion of these depositions, Judge Thomas retired and the case was reassigned to Judge James S. Gwin. After trial, the district court held that Intervenors had not shown that they were entitled to further individual relief. Judge Gwin also reexamined Judge Thomas's finding that the Union had engaged in a pattern or practice of discrimination and held that finding was clearly erroneous based upon statistical methodology that was incorrect and that failed to account for various exceptions to the requirements of the consent decree. The district court's order did not address the prior finding that the Union had violated the record-keeping and reporting requirements of the consent decree.

### DISCUSSION

### I. LAW OF THE CASE

In its opinion following the Stage II hearing, the district court relied upon the law of the case doctrine in its reexamination of the prior finding of a pattern or practice of discrimination. "The purpose of this doctrine is twofold: (1) to prevent the continued litigation of settled issues; and (2) to assure compliance by inferior courts with the decisions of superior courts." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). "[L]aw of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Moses v. Business Card Express, Inc.*, 929 F.2d 1131

forth the name, social security number, race, classification as a journeyman or journeyman-trainee or apprentice, status as a member or traveler or permit man, rate of pay and the number of regular hours, overtime hours and total hours worked by each person employed as a pipe fitter subject to the jurisdiction of the Union.

The district court found that the joinder of each contractor under Fed. R. Civ. P. 19(a) was required to secure compliance with these provisions, to avoid the imposition of inconsistent obligations upon the parties, and to ensure that complete relief could be granted prospectively to the EEOC and Intervenors.

Honeywell and Johnson argue that subjecting them to the consent decree, to which they did not consent, without notice or an opportunity to be heard constitutes a due process violation. In so arguing they rely upon *Martin v. Wilks*, 490 U.S. 755 (1989),[2] in which the Court held that precluding a party from challenging a consent decree to which it was not a party "contravenes the general rule that a person cannot be deprived of his legal rights in a proceeding to which he is not a party." *Id*. at 759. Honeywell and Johnson argue that subjecting them to the provisions of the consent decree falls squarely within this rule. Additionally, they cite to *Local 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland*, 478 U.S. 501 (1986), for the propositions that:

---

[2] "It should be noted that portions of the Supreme Court's decision in *Martin v. Wilks* have been superseded by statute--Section 108 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(n)(1), which became effective on November 21, 1991. However, we agree with the court in *Maitland v. University of Minnesota*, 43 F.3d 357 (8th Cir.1994) that section 108 is not to be applied retroactively, and, therefore, we do not consider it in regard to the present case." *Rafferty v. City of Youngstown*, 54 F.3d 278, 281 (6th Cir. 1995).

## V. CONTEMPT

The EEOC argues that, despite the district court's reversal of its finding of a pattern or practice of discrimination, it is still the prevailing party with respect to the issue of whether the Union had violated the record-keeping and reporting requirements of the consent decree. The Union responds that the final order of June 25, 1998, from which all of these appeals arises, vitiates all prior orders of the district court because those orders relied upon the statistical analysis of the court-appointed expert, and the court found that analysis to be unreliable in its June 25, 1998 order.

The district court has not had an opportunity to specifically address this issue. Accordingly, we remand this issue for consideration before the district court, when it decides the pending issues of attorney fees and costs.

## VI. JOINDER OF HONEYWELL AND JOHNSON

In an order dated October 29, 1992, the district court denied the EEOC's motion to certify a class of defendants pursuant to Fed. R. Civ. P. 23(b)(2), yet treated the motion as one for the joinder of unwilling party defendants under Rules 19(a) and 21. Based upon the following paragraphs in the consent decree, the court ordered Honeywell and Johnson, among many other contractors, to be joined as defendants:

Requests for referral of employees through the Union shall be made in writing specifying the number of journeymen and journeymen-trainees required; provided, that a request for referral of employees may be made orally by an employer subject to later confirmation in writing as above provided within not more than three business days thereafter.
. . .
[E]ach contractor employing members of the Union shall file with the Court and serve upon all counsel a copy of the form presently in use for reporting contributions to the fringe benefit funds for such calendar month, setting

(6th Cir. 1991) (quoting *Arizona* for this proposition). "Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona,* 460 U.S. at 619 n.8. "Law of the case directs a court's discretion, it does not limit the tribunal's power." *Id.* at 618.

"'Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case.'" *Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (*quoting Coal Resources, Inc. v. Gulf & Western Ind.*, 865 F.2d 761, 766, opinion amended on denial of reh'g, 877 F.2d 5 (6th Cir. 1989)). "As we have held, however, this 'law of the case' doctrine is 'directed to a court's common sense' and is not an 'inexorable command.' We have stated three reasons to reconsider a ruling . . . [including] where a decision is clearly erroneous and would work a manifest injustice." *Id.* (*quoting Petition of U.S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir. 1973)). "It is within the sole discretion of a court to determine if a prior ruling should be reconsidered. Thus, we decline to impose any conditions or limitations upon a court's power to review a prior ruling of [its own or of][1] another court." *Todd*, 920 F.2d at 403. Thus, the propriety of the court's reconsideration of its prior finding will be reviewed for abuse of discretion.

Intervenors argue that the district court abused its discretion by exceeding the scope of the grounds upon which the Rule 59(e) motion was brought. That motion sought a hearing, that became the Stage II hearing, on the question of whether individual relief could be awarded to the class members. Thus, Intervenors argue that it was an abuse of discretion to

---

[1] "[The law of the case] doctrine applies with equal vigor to the decisions of a coordinate court in the same case and to a court's own decisions." *Todd*, 920 F.2d at 403.

reconsider the prior finding of a pattern or practice of discrimination.

There are two fatal flaws in this argument. First, Intervenors cite to no authority in support of the proposition that the only portions of a judgment subject to either being reviewed or amended pursuant to a Rule 59(e) motion are those grounds upon which the motion is founded. Rather, "[a] judge may enlarge the issues to be considered in acting on a timely motion under Rule 59." *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986). The second major flaw in this argument is that Judge Thomas had previously notified the parties that his earlier finding of a pattern or practice of discrimination was subject to revision following the Stage II hearing:

> [D]efendant Local 120 has the burden of proof at the Stage II hearing. However, whether Local 120 has carried its burden in the damages hearing will not be affected by this Court's finding [that the Union had not rebutted the prima facie discrimination].
>
> * * *
>
> Depending on the state of the record as augmented by the forthcoming hearing, this Court will finally determine, pursuant to Rule 59(e), (1) whether any of the above referenced rulings of the court in Memorandum and Order II [including the finding of a pattern or practice of disparate treatment in the work referral system] would require modification; and, (2) whether or not the evidence and the Court's authority under Rule 59(e) would warrant affirming its [prior] conclusion . . . that "specific loss of pay could not be proved by the particular black pipefitter, and he or she could not be awarded specific compensatory damages."

In the quoted language, the district court distinguished between allowing an independent reexamination of whether the Union could rebut the Intervenors' prima facie case of discrimination and allowing the presentation of the same

following Judge Thomas's retirement. "If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties." Fed. R. Civ. P. 63. Intervenors allege that Judge Gwin was not familiar with the record and failed to make the required certification. The Union responds that at various times during the Stage II hearing, Judge Gwin indicated his extensive familiarity with the record.

Intervenors rely upon *Semaan v. Allied Supermarkets, Inc.*, 774 F.2d 1164, 1985 WL 13677 (6th Cir. Sept. 25, 1985) (unpublished), for the proposition that a successor judge may not reopen a judgment of liability in a damages hearing if any issues of credibility are involved. *Semaan* is inapplicable because it involved a motion for a new trial rather than the issue of reexamining a prior finding of a court.

Intervenors also cite to *Semaan* for its discussion of *Berry v. School District of the City of Benton Harbor*, 494 F.Supp. 118 (W.D. Mich. 1980). The *Semaan* court discussed *Benton* approvingly, stating that:

> The [*Benton*] court held that a motion for a new trial under Rule 63 is a matter of discretion but that the court "may not properly overrule the decision of the first judge in the absence of special circumstances." A difference of opinion regarding credibility and the weight of the evidence does not constitute exceptional circumstances.

*Semaan*, 1985 WL 13677, at *2. Although the rationale that a successor judge should respect the credibility determinations of his predecessor is valid, Intervenors' argument on this issue must fail as no new trial motion was ever at issue and, as stated above, the issue of the propriety of reexamining the finding of a pattern or practice of discrimination is governed by the law of the case doctrine.

prepared and presented summaries of their previously disclosed reports. Each of the experts stated that all of the material in the various exhibits and reports had been addressed in earlier expert reports or in the depositions of the experts. As there was no objection to that testimony, it is difficult to see how the admission of such evidence could amount to an abuse of discretion.

The Union also argues that due to the various delays in the production of Intervenors' expert report, it was properly granted the right to submit a supplemental report. Intervenors agree that this right was granted to the Union, but they argue that it was abused because the disclosed information was not "supplemental." However, the testimony of the experts that the evidence contained nothing new is dispositive of Intervenors' argument.

Intervenors argue that the district court failed to properly exercise its gatekeeping role under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), as applied to all forms of expert testimony in *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999), by allowing the introduction of evidence that was both irrelevant and of insufficient reliability. The Union responds that its expert evidence was clearly relevant to the issue of whether Intervenors were entitled to individual relief.

The examples of allegedly irrelevant evidence that Intervenors assert, specifically the expert evidence concerning what hours measurement to employ in evaluating claims for individual relief, meets the standard of relevance. Additionally, Intervenors fail to present a discernable argument as to why this expert evidence does not meet the reliability requirements of *Daubert* and *Kumho*. Thus, no error occurred with respect to this issue.

## IV. RULE 63

Intervenors argue that Judge Gwin failed to comply with the requirements of Fed. R. Civ. P. 63 upon receiving the case

rebuttal evidence in the hearing on individual relief. Thus, Intervenors' argument that Judge Thomas prohibited the introduction of evidence that would rebut his earlier practice and pattern finding in later orders is only partially correct. The district court relied on rebuttal evidence during its reexamination of its finding of a pattern or practice of discrimination. Judge Thomas had prohibited this rebuttal evidence in his March 31, 1993 and October 3, 1997 Orders, but only in the context of attacking individual claims. Judge Thomas stated that the finding of a pattern or practice of discrimination could be revisited outside of this context. Intervenors cite to no authority indicating that the district court erred by doing so.

Intervenors argue that when the district court revisited and abrogated its pattern or practice finding, it "abused its discretion by making clearly erroneous findings." The district court based its abrogation on two main factors. First, it found that "the methodology used to approximate out-of-work periods is extremely inaccurate." These inaccuracies were based upon several examples in which the data contradicted the conclusions of Intervenors' expert. Second, the district court found that the methodology used by Intervenors to determine hours allegedly lost due to discrimination to be faulty. According to the district court, the methodology failed to account for recalls and for requests for specialized skills, which were allowed under the consent decree. A decision "is clearly erroneous and would work a manifest injustice," if the data relied upon to make that decision ignores or fails to account for the circumstances the data is supposed to reflect. *Arizona*, 460 U.S. at 619. The data in this case cannot show that the Union's referral practice was inconsistent with the consent decree because the collection of the data did not track the terms of the decree. Thus, the decision of the district court to reverse its earlier finding with regard to a pattern or practice of discrimination on the part of the Union was not an abuse of discretion.

## II. INDIVIDUAL CLAIMS

Intervenors argue that the district court erred by not affording each plaintiff a presumption of discrimination based upon the earlier ruling that the Union engaged in a pattern or practice of discrimination. They correctly point out that the district court properly recognized this presumption after it found class-wide disparate treatment. Following such a finding, a remedy phase is conducted during which each class member is presumed to have been discriminated against and the burden shifts to the defendant to rebut that presumption in each individual case. "[I]n so-called 'pattern or practice cases,' if the plaintiff can establish 'that racial discrimination was the company's standard operating procedure,' the burden of proof shifts to the defendant to show that in individual cases the hiring decision was not due to the discriminatory policy but to some other, legitimate consideration." *Lujan v. Franklin County Bd. of Educ.*, 766 F.2d 917, 928-29 (6th Cir. 1985) (quoting *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 (1977)) (citation omitted). As the district court's opinion describing the procedure to be employed at the Stage II hearing shows, this burden-shifting approach was properly recognized by the district court.

The district court's reversal of its prior finding of a pattern or practice of discrimination extinguished any presumption the Intervenors were entitled to at the Stage II hearing. After the district court reversed its pattern or practice finding, it was not required to pass upon the damages claim and was no longer bound by Judge Thomas's previous limitations on pattern and practice rebuttal evidence in the individual damages hearing. The district court did pass on that claim, however, finding that "even if Plaintiff-Intervenors' methodology were sufficiently accurate, which it is not, Local Union 120 has rebutted Plaintiff-Intervenors' request for additional relief." This finding was based on a lack of direct evidence of discrimination and circumstantial evidence "that black pipefitters were referred at numbers higher relative to their numbers than white pipefitters."

Because the district court did not err by reexamining and reversing its earlier finding of a pattern or practice of discrimination, the question of whether it properly applied the burden-shifting approach is moot. Because the finding that the Union did not engage in a pattern or practice of discrimination was not an abuse of discretion, it is unnecessary to determine whether Intervenors are entitled to individual relief. Even if the district court erred in concluding that the Union had rebutted Intervenors' claims for individual relief, such error would not be reversible because its conclusion that there was no pattern or practice of discrimination would dispose of the matter entirely.

## III. EVIDENTIARY RULINGS

Intervenors argue that the district court erred by admitting into evidence several volumes of previously undisclosed expert reports, exhibits, and business records. They argue that admitting this evidence was prejudicial due to its sheer volume and their reliance upon the reports produced during discovery, which they allege to be materially different from those at issue. Additionally, they argue that the evidence at issue is prejudicial because it was not produced prior to the depositions of the various experts in violation of a court order to do so. "Generally, a trial court's evidentiary determinations are reviewed for an abuse of discretion." *United States v. Smithers*, 212 F.3d 306, 310 (6th Cir. 2000).

This court has held that without a fair opportunity to attack the credibility of a report that was not disclosed during discovery, a new trial was warranted on the basis of the report's having been admitted. *See Dorsey v. City of Detroit*, 858 F.2d 338, 343-44 (6th Cir. 1998). Crucial to the court's determination was that the author of the report was unavailable for cross-examination after having moved out of the court's jurisdiction. *See id.* at 343.

The Union responds by arguing that its experts did not present any new opinions at the Stage II hearing but merely