ID SECURITY SYSTEMS CANADA,
INC., Plaintiff,

v.

CHECKPOINT SYSTEMS,
INC., Defendant.

No. CIV.A.99–577.

United States District Court,
E.D. Pennsylvania.

May 20, 2003.

Francis X. Taney, Jr., Buchanan Ingersoll PC, J. Clayton Undercofler, Saul Ewing LLP, Philadelphia, PA, James G. Kress, Howrey, Simon, Arnold & White LLP, Washington, DC, Kara H. Goodchild, Saul Ewing L.L.P., Philadelphia, PA, Kenneth W. Donnelly, Howrey, Simon, Arnold & White LLP, Washington, DC, Rudolph Garcia, Saul Ewing LLP, William A. De Stefano, Saul Ewing LLP, Philadelphia, PA, for Plaintiff.

C. Clark Hodgson, Jr., Stradley, Ronon, Stevens & Young, LLP, Philadelphia, PA, James F. Rill, Howrey, Simon, Arnold & White, LLP, John Deq. Briggs, III, Howrey, Simon, Arnold & White LLP, Washington, DC, Keith R. Dutill, Stradley, Ronon, Stevens & Young, LLP, Malvern, PA, Michael C. Chase, Stradley, Ronon, Stevens & Young, LLP, Patricia Casperson, Stradley, Ronon, Stevens and Young LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the court is Checkpoint's motion to amend the judgment to reflect the $2.11 million credit against the $13 million damage award in favor of ID Security on the state law claims. For the reasons that follow, the motion will be granted.[1]

## I. FACTS

On May 28, 2002, following a jury trial, the court entered judgment upon the verdict in favor of ID Security Systems Canada, Inc. ("ID Security") and against Checkpoint Systems, Inc. ("Checkpoint") in the amount of $19 million on the state law claims.[2] Shortly thereafter, the parties submitted to the court a stipulation providing that the amount of the state law claims was to be reduced by $2.11 million, reflecting the amount paid by a non-party, Tokai Electronics, to ID Security in a settlement of litigation in the Canadian courts concerning events related to those complained of in this case. The parties stipulated that, given the $2.11 million credit, judgment in a total of $16,890,000 be entered against Checkpoint:

> IT IS FURTHER ORDERED that Judgment is entered in favor of plaintiff and against defendant as to counts four and five in the amount of NINETEEN MILLION DOLLARS ($19,000,000) minus an agreed upon credit of TWO MIL-

---

1. A full recitation of the facts of the case is contained at *ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.,* 249 F.Supp.2d 622 (E.D.Pa.2003) (Robreno, J.).

2. The judgment on the antitrust claims in the amount of $85.5 million, which was later vacated, is not an issue in this matter.

LION ONE HUNDRED AND TEN THOUSAND DOLLARS ($2,110,000) for a total of SIXTEEN MILLION EIGHT HUNDRED NINETY THOUSAND DOLLARS ($16,890,000) in the state claims.

The stipulation was approved by the court "by agreement of the parties" on June 12, 2002.

On March 28, 2003, the court entered an order granting in part and denying in part Checkpoint's post-trial motion, the effect of which was, in relevant part, to reduce the jury's award of $19 million, entered against Checkpoint by the court's May 28, 2002 order, by $6 million to $13 million. Thus, the court's order of March 28, 2003 reduced the original amount of the jury award, rather than the stipulated amount. On March 31, 2003, ID Security took an appeal from the court's March 28, 2003 order.

On March 31, 2003, the court entered an order directing Checkpoint, after consultation with ID Security, to submit by April 7, 2003 a proposed form of order setting forth the amount of the altered judgment. The court's order sought to reconcile the amount stated in the March 28, 2003 judgment with the credit earlier granted to Checkpoint by stipulation.

On April 3, 2003, Checkpoint filed a motion to amend the March 28, 2003 order to reduce the $13 million award by $2.11 million in accordance with the June 12, 2002 stipulation submitted by the parties and approved by the court.

The gist of Checkpoint's argument is that it is entitled to have the $2.11 million credit agreed upon by the parties in their June 12, 2002 stipulation applied to the March 28, 2003 order, just as it had been applied to the May 28, 2002 judgment. ID Security demurs, contending that the June 12, 2002 stipulation applied only to the May 28, 2002 judgment and that, under the changed conditions of a greatly reduced judgment, it may now revisit before the court the merits of whether Checkpoint is entitled to the $2.11 million credit granted in the June 12, 2002 order amending judgment. Before the court is Checkpoint's motion to amend the judgment to reflect the $2.11 million credit against the $13 million damage award in favor of ID Security on the state law claims.

## II. DISCUSSION

### A. Jurisdiction

■ At oral argument, ID Security asserted that the court did not "have jurisdiction [at this time] to do anything other than deny [Checkpoint's] motion," given that ID Security has filed a notice of appeal. T.T. 5/1/03 (doc. no. 280) at 12. The logical underpinning of this argument appears to be that because the court's March 28, 2003 order, from which ID Security appeals, operates as the "final judgment" in this case, the district court was stripped of jurisdiction upon the filing of a notice of appeal, and therefore has no more authority to alter the judgment. The court does not agree.

■ Under certain circumstances, the filing of a notice of appeal of a final judgment does not automatically strip the district court of all jurisdiction to alter that judgment. Rather, appellate jurisdiction awaits the complete resolution of the matter in the district court. *See Knight v. Brown Transport Corp.*, 806 F.2d 479, 483 (3d Cir.1986) ("[I]f a notice of appeal is filed before *disposition* of ... various motions ..., the notice of appeal is a nullity.").

■ Rule 4 of the Federal Rules of Appellate Procedure "enumerates certain instances in which a ... notice of appeal will 'self-destruct' and thereby fail to *vest*

*jurisdiction in the appellate courts.*" *Id.* (emphasis supplied). In particular, Rule 4(a) provides that "[i]f a party files a notice of appeal after the [district] court . . . enters a judgment but before it disposes of [certain motions]the notice becomes effective to appeal . . . in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R.App. P. 4(a)(4)(B)(i). Motions to alter or amend judgment under Rule 59, are among those motions that, if timely filed, have such an effect. Fed. R.App. P. 4(a)(4)(A)(iv). Because the court concludes that Checkpoint's motion is properly construed as a motion to amend judgment pursuant to Rule 59(e),[3] it must inquire, for purposes of determining its jurisdiction, whether the motion was timely filed. *See* Fed. R.App. P. 4(a)(4); *Kraus v. Consol. Rail Corp.*, CIV. A. Nos. 87–5905, 88–2509, 88–5101, 88–5878, 1991 WL 46272 at \*2 (E.D.Pa. Mar.27, 1991) (McGlynn, J.) ("[T]he ten day limitation for motions under Fed. R.Civ.P. 59(e) is mandatory and jurisdictional.").

### B. Timeliness

 Rule 59(e) of the Federal Rules of Civil Procedure provides that "[a]ny motion to alter or amend judgment shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). ID Security contends that the instant motion is untimely, because the time for filing such a motion in this case actually lapsed on June 8, 2002, ten days after the *original* judgment was entered in this case following the jury verdict, even though

that original judgment was significantly altered by the court's disposition of post-trial motions in this case. The court does not agree.

Instructive in this regard is *Charles v. Daley*, 799 F.2d 343 (7th Cir.1986). In that case, after protracted litigation, certain intervenors sought clarification under Rule 59(e) of the district court's award of attorneys' fees. *Id.* at 344. After the district court clarified the order awarding attorneys' fees, a legal defense fund that had represented one of the intervenors, but that had not itself intervened as a party in the action, filed a Rule 59(e) motion in which it sought to be made a full-fledged defendant in order to relieve the intervenors of personal liability. *Id.* at 345. Almost a year later, the district court ruled on this second motion and thus altered the original attorneys' fees order a second time. *Id.* at 346. When the intervenors sought to appeal this second alteration, the plaintiffs in the action asked the Seventh Circuit to dismiss the appeal as untimely, on the grounds that the time to file it had started to run when the district court acted on the first Rule 59 motion in the case. *Id.* The Seventh Circuit declined to adopt that position, and offered the following explanation of the circumstances under which more than one Rule 59 motion may be appropriately filed in a particular case:

> The [ten day] time limit [to file Rule 59 motions] would be a joke if parties could continually file new motions, preventing the judgment from becoming final. The 10 days runs from the initial judgment,

---

**3.** Checkpoint originally cited Rule 60(a), which provides for the correction of clerical errors contained in judgments, as the basis for its motion. The court finds, however, that Rule 60(a) does not constitute a proper vehicle for amending its March 28, 2003 order, the final judgment in this case. This is so because determining whether a credit applies in this case involves a substantive determination of the agreement in place between the parties, rather than a mechanical correction. Therefore, the court agrees with ID Security's characterization of Checkpoint's motion, and will construe it as having been brought pursuant to Rule 59(e), rather than under Rule 60(a).

so later motions are not timely. Yet the purpose of Rule 59 is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings. The purpose of the rule suggests that when a court *alters* its judgment, a person aggrieved by the alteration may ask for correction. A successive motion directed to the same judgment is ineffectual, but when there is a new judgment an alteration independently sufficient to restart the time for appeal-*there is also a new period in which to file a motion under Rule 59.* *Id.* at 347–48 (second emphasis supplied). The court finds this logic persuasive. By contrast, accepting ID Security's argument that Checkpoint had ten days only from the entry of the original judgment would leave Checkpoint without any vehicle through which it could protest any part of the altered judgment.

In this case, the original judgment in the full amount of the jury verdict rendered against Checkpoint has been substantially altered in the post-trial motions stage. Indeed, by the terms of the court's order of March 28, 2003, which reflected the court's reconsidered calculus of the substantive merits of the case, the $85.5 antitrust verdict against Checkpoint was vacated in its entirety, and the damages awarded on ID Security's state law claims was reduced by $6 million. The court finds that its disposition of post-trial motions, in practical effect, altered the original judgment, and opened the door for the filing of Rule 59 motions directed to the altered judgment. Thus, the court concludes that Rule 59 afforded Checkpoint ten days from the entry of this altered judgment, i.e., ten days from March 28, 2003, to file a motion to amend or alter. Checkpoint filed the

instant motion on April 7, 2003. Because that motion is timely, it may be considered by the district court.[4]

### C. Merits

■ ID argues that its agreement to reduce the amount of the judgment by $2.11 million was only valid so long as the judgment remained intact and that, now that the amount of the judgment has been substantially reduced, it is entitled to present evidence to the court that Checkpoint is not entitled to a $2.11 million credit. Checkpoint argues that the altered judgment is subject to the same $2.11 million credit that ID Security agreed to at trial (during the charge conference, after the verdict was returned, and in the stipulation submitted by the parties and approved by the court), and that ID Security's counsel did not limit or condition the agreement to the credit in any way. Checkpoint contends, in essence, that had ID Security made the credit agreement conditional, it would have rejected it, and instead argued to the jury its entitlement to the credit in full. *See* T.T. 5/1/03 (doc. no. 280) at 23–25. In other words, according to Checkpoint, it gave up the right to argue entitlement to the jury in return for ID Security's unconditional agreement that the full credit was to be applied by the court to whatever recovery ID Security obtained in this case. *See* T.T. 5/1/03 (doc. no. 280) at 23–25.

The issue is whether the parties agreed to an unconditional credit of $2.11 million against *any* damage award that was entered in favor of ID Security in this case, or whether the agreement was limited or conditioned in such a way that ID Security could revisit the amount of the credit at a later date upon a change in circumstances.

4. The appropriateness of appellate court jurisdiction remains, of course, a question for the appellate court, if raised by proper motion by a party.

The court finds that the parties unconditionally agreed that the $2.11 credit was to be applied to reduce the amount of any recovery that ID Security obtained against Checkpoint in this litigation.

One, the parties' intent may be gleaned from counsels' representations during the charge conference in this case, before any verdict was returned:

> ID Security: And then Page 20, I think we should add something about the effect of the Tokai settlement and that that's a matter for the Court.
>
> The Court: Okay, let me see.
>
> (Pause.)
>
> Checkpoint: Your Honor, I guess it would be helpful for me in evaluating that to know– to ensure that we're in agreement and can stipulate that the verdict here is to be molded once it's entered to adjust for the amount of the Canadian settlement, which is 2.1 million U.S. dollars?
>
> ID Security: Yes.
>
> Checkpoint: With that understanding, your Honor ...
>
> The Court: I would just simply add, "the effect of the settlement, if any, will be addressed by the Court," if you're going to do that.
>
> Checkpoint: Yes, I just want it to be clear to the jury that this is an instruction only with respect to its award of damages.
>
> ID Security: Your Honor-
>
> The Court: Well, "in connection with your award of damages," it says here.
>
> Checkpoint: Okay.
>
> ID Security: Your Honor, the concern is we wouldn't want the jury to think that they're supposed to deduct that and then have it deducted twice.
>
> The Court: Mm-hmm.
>
> ID Security: Or worse yet, not know how to deal with it and say half and half or something.

T.T. 5/20/02 (doc. no. 200) at 26–27. Under a fair reading, this exchange reveals that counsel for ID Security, not knowing the outcome of the case, agreed for strategic reasons, to avoid possible confusion and to present the jury with a clear choice, T.T. 5/20/02 (doc. no. 200) at 26–27, to a $2.11 million credit to be applied by the court against any recovery that ID Security might obtain in this case.[5] In return, Checkpoint forewent the opportunity to make the argument to the jury that it was entitled to the full credit. *See* T.T. 5/1/03 (doc. no. 280) at 23–25.

Two, victorious after the return of the jury verdict, ID Security's counsel confirmed to the court that an applicable credit in the amount of $2.11 million was appropriate in this case:

> ID Security: Your Honor, ... there's a preliminary matter of what credit is to be-or what reduction is to be applied based on the Tokai settlement and I have those figures for your Honor. The total in U.S. dollars was $2.11 million. So I think the appropriate procedure would be to subtract that from the Federal award, and then I think trebling is a mandatory matter ... As to the state claim, the same amount should be deducted; of course, there would be no trebling. And obviously the plaintiff would not collect both and, so long as both are ultimately upheld and become final, the plaintiff would choose to take

---

5. This is a reading consistent with ID Security's counsel's own explanation at the hearing with respect to the instant motion that he and counsel for Checkpoint "as a compromise ... effectively settled that issue so as not to have a fight about it." T.T. 5/1/03 (doc. no. 280) at 5.

the Federal amount, which would obviously be higher. But it's–

The Court: So you're saying that judgment should be entered in the amount of the Federal claims and in the amount of the state claim, minus a credit, and the only thing is that execution or collection in these claims is limited to one or the other?

ID Security: Yes, your Honor.

T.T. 5/24/02 (doc. no. 221) at 11–12. This exchange further supports the conclusion that ID Security and Checkpoint had reached an agreement as to the total amount of the applicable credit in this case. Indeed, ID Security's counsel's comments to the court reveal that he had considered the possibility that part of the judgment might be vacated at a later date, and that, in the event of the modification of the verdict against Checkpoint, the $2.11 million credit would remain in force.[6]

Three, the June 11, 2002 stipulation further indicates that a final agreement without conditions or reservations had been reached with respect to the amount of the credit. Had the agreement reflected in the stipulation indeed been as narrow as ID Security now suggests, for example, ID Security surely could have included a provision in the stipulation reserving ID Security the right to argue and prove the amount of applicable credit in the event that the judgment was reduced at a later date. Absent such a reservation, and given the larger context of this case, the court concludes that ID Security is bound by the terms of a deal that it made for strategic reasons at and after trial, and may not revisit the issue now with the benefit of hindsight.[7] Therefore, Checkpoint is entitled to a $2.11 million credit against the $13 million judgment entered in this case by the court's order of March 28, 2003.

### III. CONCLUSION

For the foregoing reasons, the court will grant Checkpoint's motion to amend order. A $2.11 million credit will be applied to the $13 million judgment now entered against Checkpoint, and judgment will be entered in favor of ID Security in the amount of $10,890,000.

An appropriate order follows.

### *ORDER*

**AND NOW,** this **20th** day of **May, 2003,** it is hereby **ORDERED** that defendant's motion to amend order (doc. no. 267) is **GRANTED.**

**IT IS FURTHER ORDERED** as follows:

1. A credit in the amount of $2.11 million is to be applied against the $13 million damage award affirmed in the court's Order of March 28, 2003.

2. Paragraph 6 of the court's Order of March 28, 2003 is **VACATED.**

3. Judgment is **ENTERED** in favor of ID Security and against Checkpoint in the amount of $10,890,000.

**AND IT IS SO ORDERED.**

---

**6.** As counsel for ID Security put it at the hearing on the instant motion, "[w]e were feeling generous that day." T.T. 5/1/03 (doc. no. 280) at 7.

**7.** Although the stipulation purports to modify specifically the trebled $28.5 million antitrust verdict and the $19 million state law verdict, it did so necessarily to quantify the actual judgment to be entered in this case pursuant to the parties' agreement.